UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
LOMA DELI GROCERY CORP. and KEVIN                   :
RODRIGUEZ,                                          :
                                                    :          20 Civ. 7236 (JPC)
                              Plaintiffs,           :
                                                    :          OPINION AND ORDER
         -v-                                        :
                                                    :
UNITED STATES OF AMERICA,                           :
                                                    :
                              Defendant.            :
                                                    :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

In May 2020, the U.S. Department of Agriculture's Food and Nutrition Service ("FNS")

permanently disqualified Plaintiff Loma Deli Grocery Corp. ("Loma" or "Loma Deli"), a retail

food store in New York's Bronx County, from participating in the Supplemental Nutrition

Assistance Program ("SNAP"), after concluding that Loma more likely than not had trafficked in

SNAP benefits.  Loma and its owner, Plaintiff Kevin Rodriguez, have brought this suit against

Defendant United States of America (the "Government"), seeking judicial review of FNS's final

decision pursuant to 7 U.S.C. § 2023(17) and 7 C.F.R. § 279.7.  The Government filed a pre-

discovery motion for summary judgment, contending there is no genuine issue of material fact as

to the validity of FNS's determination that Loma more likely than not trafficked in SNAP benefits

or FNS's imposition of a permanent disqualification.  For the reasons that follow, the Court grants

the Government's motion for summary judgment.

## I. Background[1]

### A. The Statutory and Regulatory Scheme Governing SNAP

SNAP is designed to "supplement[] the funds families have to spend on food with SNAP benefits, which may be used to purchase eligible food items at authorized retail food stores."  Def. 56.1 Stmt. ¶ 2; *see* 7 U.S.C. § 2013.  At the beginning of each month, "[a] household's SNAP benefits are delivered through electronic benefit transfer ('EBT') cards," which "operate similarly to ATM or debit cards" and can be used to purchase eligible food items at any SNAP-authorized retail food store.  Def. 56.1 Stmt. ¶ 3; *see* 7 U.S.C. § 2016(h); 7 C.F.R. §§ 274.2-.3.  To make a purchase, a SNAP recipient swipes his or her EBT card through an EBT terminal and enters a personal identification number on a keypad.  Def. 56.1 Stmt. ¶ 3; 7 C.F.R. §§ 274.2(f), 274.3.  The purchase amount is then deducted from the SNAP recipient's EBT account and "electronically credited to the retail food store owner's bank account."  Def. 56.1 Stmt. ¶ 3.  The system is cashless, and the EBT terminal generates a receipt for the transaction that displays the SNAP recipient's remaining EBT balance.  *Id.*

"FNS electronically monitors participating stores' EBT transactions, conducts periodic reviews of stores, and will initiate an investigation of a store when it believes an investigation is warranted by suspicious EBT transaction data."  *Id.* ¶ 4.  If FNS determines that it is more likely than not a store committed a trafficking violation—which includes, among other things, "[t]he buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed

---

[1] The following facts are drawn primarily from the parties' statements of material facts pursuant to Local Civil Rule 56.1.  Dkt. 50 ("Def. 56.1 Stmt."); Dkt. 56 ¶¶ 1-53 ("Pls. Counter 56.1 Stmt."); *id.* ¶¶ 54-62 ("Pls. 56.1 Stmt.").  Unless otherwise noted, the Court cites to only one party's Rule 56.1 or Counter-Rule 56.1 Statement where the parties do not dispute the fact, the adverse party has offered no admissible evidence to refute that fact, or the adverse party simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.

via [EBT] cards . . . for cash or consideration other than eligible food," 7 C.F.R. § 271.2—the store owner faces permanent disqualification from SNAP participation or a civil money penalty ("CMP"), *id.* § 278.6.  A CMP in lieu of disqualification is only available if the store "timely submits to FNS substantial evidence which demonstrates that [it] had established and implemented an effective compliance policy and program to prevent [SNAP violations]."  *Id.* § 278.6(i); *see* Def. 56.1 Stmt. ¶ 47.  When FNS disqualifies a store or issues a CMP for a trafficking violation, the store may request administrative review by an Administrative Review Officer who will issue a Final Agency Decision based on evidence compiled by FNS and arguments from the store.  7 U.S.C. § 2023(a)(3), (5); *see* Def. 56.1 Stmt. ¶¶ 48-52.  Upon receiving a Final Agency Decision, a store has thirty days to seek judicial review of the determination in federal or state court.  7 U.S.C. § 2023(a)(13).

## B.  Factual Background

Rodriguez owns Loma, a 1,350-square foot store with a 120-square foot storage area, located in Bronx County, New York.  Def. 56.1 Stmt. ¶¶ 5, 12; *see also* Dkts. 32, 39, 42 (collectively, "Administrative Record" or "A.R.") at 212-13.  FNS categorizes Loma as a convenience store.  Def. 56.1 Stmt. ¶ 5.  On March 14, 2018, FNS approved Rodriguez and Loma to participate in SNAP.  *Id.* ¶ 6.

In 2019, FNS initiated an investigation into Loma after the ALERT system identified patterns that it found to be consistent with possible EBT trafficking.  *Id.* ¶¶ 5, 7; A.R. at 1030.  As part of the investigation, an FNS contractor visited Loma on July 30, 2019, and "documented the store size and available food items, provided a layout of the public areas of the store, and took photographs of interior and exterior of the store."  Def. 56.1 Stmt. ¶¶ 8-9; A.R. at 212-45.  The store visit revealed that Loma had a deli section; sold few items in bulk; did not carry unique or

specialty goods; had six shopping baskets, one cash register/check-out station, and one EBT device; and had no shopping carts, conveyor belts, dedicated bagging areas, or optical scanners. Def. 56.1 Stmt. ¶¶ 10, 13, 15; A.R. at 212-13, 1042-43.  FNS found that the store was optimized for the sale of small quantities of common eligible and ineligible items.  Def. 56.1 Stmt. ¶ 14; A.R. at 1042.  It also found that Loma did not conduct wholesale business, store eligible stock offsite, offer delivery service, or take orders by telephone, internet or fax.  Def. 56.1 Stmt. ¶ 16; A.R. at 1043.  FNS concluded that it "is highly unlikely, particularly without any shopping carts present, that individual store patrons would regularly buy bulk quantities of individually packaged eligible goods."  A.R. at 1043; *see* Def. 56.1 Stmt. ¶ 18.

FNS then analyzed information from the store visit, EBT data from Loma and other similarly-situated stores in the same area, and shopping patterns of Loma customers.  Def. 56.1 Stmt. ¶ 11; A.R. at 1028-82.  FNS examined the 6,119 EBT transactions that occurred at Loma from March 2019 through August 2019 (the "Review Period") and identified what it considered to be 328 statistically unusual transactions, falling into two categories.  Def. 56.1 Stmt. ¶¶ 19, 28. First, FNS identified multiple transactions made from the accounts of individual SNAP households within a set period of time.  A.R. at 385.  Specifically, FNS identified twenty-three sets of transactions, encompassing fifty-four transactions in total, that were made from individual household accounts within time periods that ranged from three minutes and fifty seconds to thirty hours, three minutes, and twenty-two seconds, and totaling $3,520.40 in SNAP benefits.  Def. 56.1 Stmt. ¶¶ 20-23; A.R. at 388-90.  Second, FNS identified 274 transactions that were "large based on the observed store characteristics and recorded food stock," ranging from $31.99 to $282.85, and totaling $16,265.61 in SNAP benefits.  Def. 56.1 Stmt. ¶¶ 25-28; A.R. at 385, 391-95. Similarly, FNS identified 278 transactions that were over $31.98, all of which were at least 284.49

percent higher than the average purchase amount for a convenience store in Bronx County.  Def. 56.1 Stmt. ¶ 28; A.R. at 1051.

FNS also compared Loma to the six other similarly-situated SNAP-authorized stores within a one-mile radius of Loma and found that Loma had an unusually high dollar volume of SNAP transactions compared to these stores.  Def. 56.1 Stmt. ¶¶ 29-31.  Similarly, Loma's average transaction amount of $11.55 was approximately thirty-nine percent higher than the average transaction of $8.32 at convenience stores in the Bronx during the Review Period.  *Id*. ¶ 33.  Loma's dollar volume of SNAP transactions during the Review Period was $70,689.92, whereas Bronx County's convenience stores averaged a dollar volume of $35,490.10 in SNAP transactions during the same time.  *Id*. ¶ 32.

FNS also analyzed the shopping patterns of households that conducted flagged EBT transactions at Loma during the Review Period, finding that "these households also shopped at nearby stores, in many cases making visits to both Loma Deli and a larger and better stocked store on the same day or close in time to making" a flagged transaction at Loma.  *Id*. ¶¶ 34-35.  For instance, FNS identified one household that spent $119.50 at Loma twenty-one minutes after spending $31.69 at a nearby superstore.  *Id*. ¶ 36.

FNS "concluded that the evidence warranted issuance of a trafficking charge letter."  *Id*. ¶ 37; *see* A.R. at 1082.  FNS issued a Charge Letter, dated October 17, 2019, informing Loma that FNS "had compiled evidence that Loma Deli violated SNAP regulations by engaging in trafficking," explaining that "an analysis of the records revealed EBT transactions that 'establish[ed] clear and repetitive patterns of unusual, irregular, and inexplicable activity' for Loma Deli's type of store."  Def. 56.1 Stmt. ¶ 38 (quoting A.R. at 385).  The Charge Letter also

warned that if FNS determined Loma had committed the violations, Loma would face permanent disqualification or a CMP.  *Id.* ¶ 40.

After receiving multiple extensions from FNS, Plaintiffs' counsel responded to the Charge Letter on April 7, 2020.  *Id.* ¶¶ 41-44; A.R. at 422-935.  In their response, Plaintiffs argued that the irregular EBT transactions were the "statistical results of particular shopping habits of [Loma's] clientele, mixed with the inventory and staple food items."  A.R. at 423.  Specifically, Plaintiffs asserted that Loma was miscategorized as a convenience store and should have been categorized as a grocer, as it sells staple food items and fresh deli meats and cheeses.  *Id.* at 424.  Plaintiffs emphasized that they are the only grocer in a high-density neighborhood with a large population of low-income households.  *Id.* at 424-25.  Plaintiffs therefore argued there were alternative explanations for the suspicious transactions:  The repetitive transaction patterns could be explained by co-shopping, where multiple adults share the responsibility for grocery shopping; the store's convenience; and "binge purchase[s]" of households that buy "grocery items as an emotional release after a period of no benefits."  *Id.* at 428-30.  And, according to Plaintiffs, the large transactions could be explained by customers making large purchases of meat and cheese, the convenience of the store, "binge shopping," and large households.  *Id.* at 430-31.

On April 29, 2020, FNS Program Specialist Matthew Zeidman drafted a Retailer Reply and Case Sanction Recommendation.  Def. 56.1 Stmt. ¶ 45; A.R. at 938-51.  In a Determination Letter dated May 8, 2020, FNS informed Plaintiffs that it had concluded that the violations alleged in the Charge Letter had occurred.  Def. 56.1 Stmt. ¶ 46; A.R. at 952-53.  FNS permanently disqualified Loma from SNAP for trafficking and informed Plaintiffs they were not eligible for a CMP instead of disqualification because they failed to submit sufficient evidence showing they had implemented an effective compliance policy and program to prevent future SNAP violations.

Def. 56.1 Stmt. ¶¶ 46-47; A.R. at 952-53.  The Determination Letter also advised Plaintiffs of their right to appeal to the Administrative Review Branch within ten days of receiving the Determination Letter.  Def. 56.1 Stmt. ¶ 48; A.R. at 952.

On May 13, 2020, Plaintiffs requested administrative review of FNS's determination to permanently disqualify Loma from SNAP.  Def. 56.1 Stmt. ¶ 49; A.R. at 960-63.  On June 23, 2020, Plaintiffs submitted a brief and affidavits in support of their position, Def. 56.1 Stmt. ¶ 50; A.R. at 965-90, and on June 30, 2020, FNS Program Specialist Zeidman drafted an amended Retailer Reply and Case Sanction Recommendation, Def. 56.1 Stmt. ¶ 51; A.R. at 991-1013.  On August 5, 2020, the Administrative Review Officer issued the Final Agency Decision, concluding that it was more likely than not that trafficking had occurred and sustaining FNS's decision to permanently disqualify Loma.  Def. 56.1 Stmt. ¶¶ 52-53; A.R. at 1014-26.

## C.  Procedural History

On September 4, 2020, Plaintiffs filed their Complaint, seeking judicial review of FNS's Final Agency Decision.  Dkt. 1 ("Complaint" or "Compl.").  Plaintiffs request: (1) *de novo* review of FNS's determination that Loma engaged in trafficking, *id*. ¶¶ 50-51; *see* 7 U.S.C § 2023(a)(15); 7 C.F.R. § 279.7(c); and (2) reversal of the Government's permanent disqualification from SNAP as arbitrary or capricious, Compl. ¶¶ 52-55.  The case was reassigned to the undersigned on September 29, 2020.  *See* Dkt. 20.  The Government answered the Complaint on November 23, 2020.  Dkt. 27.

The Government then filed a pre-discovery motion for summary judgment on February 24, 2021, asserting that there is no genuine issue of material fact as to the validity of FNS's conclusion that trafficking occurred or its permanent disqualification of Loma from SNAP.  Dkts. 48, 49 ("Motion").  In support of its motion, the Government submitted a Declaration from FNS Program

Specialist Zeidman, who had conducted the investigation of Loma.  Dkt. 51 ("Zeidman Decl."). Plaintiffs filed their opposition to the Government's motion for summary judgment on March 10, 2021, maintaining that Loma did not traffic in SNAP benefits.  Dkt. 55 ("Opposition").  In support of their opposition, Plaintiffs submitted: a declaration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure seeking discovery, *id.*, Exh. A ("Rule 56(d) Declaration"); an FNS study titled "Scanner Capability Assessment of [SNAP]-Authorized Small Retailers (Summary)," *id.*, Exh. B; an affidavit from Rodriguez, *id.*, Exh. C ("Rodriguez Affidavit"); and an FNS report from routine visits to Loma, unrelated to the store visit FNS conducted as part of its trafficking investigation, *id.*, Exh. D ("Routine Store Visit Report").  The Government filed a reply in further support of its motion on March 17, 2021.  Dkt. 60 ("Reply").

## II.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought."  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'"  *Jianjun Chen*, 2019 WL 1244291, at *4 (quoting

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).  The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).  The non-movant must present more than a "scintilla of evidence." *Anderson*, 477 U.S. at 252.  "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citation omitted).

### III.  Discussion

#### A.  Judicial Review of a Final Agency Decision

"Judicial review of a decision by the FNS disqualifying a firm from participation in SNAP as the result of a trafficking violation is a two-step process." *Capellan v. United States*, No. 17 Civ. 9342 (AT), 2020 WL 1047907, at *3 (S.D.N.Y. Mar. 4, 2020) (quoting *Muazeb v. United States*, No. 17 Civ. 6754 (DF), 2019 WL 1613433, at *7 (S.D.N.Y. Mar. 28, 2019)).

First, the district court reviews the matter *de novo* to determine "whether a trafficking violation warranting disqualification actually occurred." *Id.* (quoting *Muazeb*, 2019 WL 1613433, at *7); 7 U.S.C. § 2023(a)(15).  The district court's role is not simply to determine whether the administrative decision was supported by substantial evidence.  *Capellan*, 2020 WL 1047907, at *3.  Instead, the court "must 'reexamine the [FNS's] decision on a fresh record.'" *Id.* (quoting *Ibrahim v. U.S. Through Dep't of Agric.*, 834 F.2d 52, 53 (2d Cir. 1987)); *see Ibrahim*, 834 F.2d at 54 ("[T]he record in the district court, not the record before the agency, is what counts." (quoting *McGlory v. United States*, 763 F.2d 309, 311 (7th Cir. 1985)).  Although the statute states that Plaintiffs are entitled to a trial *de novo*, that does not mandate that they receive an actual trial.

Instead, "[s]ummary judgment has been held to be appropriate on *de novo* judicial review of a disqualification of a retail food store from participating in the [SNAP Program] if no genuine issue of material fact exists." *Nadia Int'l Market v. United States*, No. 5:14 Civ. 82 (CR), 2015 WL 7854290, at *5 (D. Vt. Dec. 2, 2015) (second alteration in original) (quoting *Kassem v. United States.*, No. 02 Civ. 546 (EF), 2003 WL 21382906, at *2 (W.D.N.Y. Apr. 15, 2003)), *aff'd*, 689 F. App'x 30 (2d Cir. 2017).

Second, if a court finds that a violation occurred, the court must "determine whether the sanction imposed was 'arbitrary or capricious, *i.e.*, whether it was unwarranted in law without justification in fact.'" *Capellan*, 2020 WL 10479074, at *4 (quoting *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981)); *accord Kawran Bazar, Inc. v. United States*, 721 F. App'x 7, 9 (2d Cir. 2017). "Whether the imposition of a penalty by the FNS was arbitrary or capricious is a matter of law appropriately determined on a motion for summary judgment." *Guzman v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 931 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *accord Makey Deli Grocery Inc. v. United States*, 873 F. Supp. 2d 516, 521 (S.D.N.Y. 2012). "The 'arbitrary or capricious' standard requires that an agency's decision be given substantial deference." *Capellan*, 2020 WL 10479074, at *4. "Courts in this district have repeatedly held that, '[i]f the agency has followed its guidelines . . . the reviewing court may not overturn the decision as arbitrary or capricious.'" *Makey Deli Grocery Inc.*, 873 F. Supp. 2d at 520 (quoting *Nagi v. U.S. Dep't of Agric.*, No. 96 Civ. 6034 (DC), 1997 WL 252034, at *2 (S.D.N.Y. May 14, 1997)).

## B.  Burden of Proof

Plaintiffs acknowledged in the Complaint that on judicial review, they bear the burden to demonstrate they did not engage in trafficking. *See* Compl. ¶¶ 41 n.1, 42.  Yet, Plaintiffs now aver

that a recent unpublished summary order "presents an interesting and rare opportunity for this Court to address the matter."  Opposition at 17 (citing *Timsina v. United States*, 835 F. App'x 633, 635 n.2 (2d Cir. 2020)).[2]  Plaintiffs now argue that the Government—which had the burden during the administrative proceedings to show that Plaintiffs more likely than not engaged in trafficking— should bear the burden again in a trial *de novo*.  *Id.* at 16-22.

Contrary to Plaintiffs' suggestion, there is nothing "novel" or "rare," *id.* at 16-17, about the question of who bears the burden of proof in a judicial review of an FNS disqualification determination.  *See, e.g.*, *Nadia Int'l Mkt. v. United States*, 689 F. App'x 30, 33 n.1 (2d Cir. 2017) (recognizing that the Second Circuit had not decided which party bears the burden of proof at a trial *de novo* but assuming the plaintiff has the burden).  "Section 2023 does not clearly specify which party bears the burden of proof in the review of a disqualification action."  *Id.*  And the Second Circuit "has not yet decided . . . whether the [plaintiff] must prove by a preponderance of the evidence that the disqualification decision 'is invalid' or the government must prove 'the validity of the questioned administrative action.'"  *Timsina*, 835 F. App'x at 635 n.2 (citing 7 U.S.C. § 2023(a)(16); and then citing *id.* § 2023(a)(15)).

However, "other circuits have ruled that the party challenging the agency action bears the burden of proof."  *Nadia Int'l Mkt.*, 689 F. App'x at 32 n.1 (citing *Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010)); *see Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 378 (1st Cir. 2018) ("All of the courts of appeals that have addressed the burden-of-proof issue under Section 2023 have placed the burden of proof on the party challenging the USDA's finding of liability."); *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997); *Warren v. United States*, 932 F.2d 582, 586

---

[2] In *Timsina*, the Second Circuit assumed without deciding that the district court had correctly placed the burden of proof on the plaintiff store because the plaintiff waived any challenge to that determination on appeal.  835 F. App'x at 635 n.2.

(6th Cir. 1991); *Redmond v. United States*, 507 F.2d 1007, 1011-12 (5th Cir. 1975).  In *Redmond*, which has been called a "watershed case," *Fells*, 627 F.3d at 1253, the Fifth Circuit explained that that the statute calls for the court to "determine the validity of the questioned administrative action," not to act "as if [the] agency decision had never occurred," *Redmond*, 507 F.2d at 1011-12.  The Fifth Circuit contrasted the "*de novo*" language of section 2023 with the "substantial evidence" test under the Administrative Procedures Act, 5 U.S.C. § 706(2)(E), which requires a reviewing court to determine if the findings of the agency are supported by substantial evidence in the administrative record.  *Redmond*, 507 F.2d at 1011.  In adopting the *de novo* standard, the Fifth Circuit reasoned, Congress "intended nothing more than that the district court would not be bound by the administrative record."  *Id.*  The Fifth Circuit thus concluded that the agency action must be entitled to a "presumption of validity," with the burden on the store owner to overcome this presumption on judicial review.  *Id.* at 1012.   This "recognizes the initial investigation and determination of the agency," while still "protect[ing] the rights and interests of the store against final adverse action without the opportunity for an adversary hearing."  *Id.*

The Court agrees with *Redmond* and the multitude of other courts in this Circuit that have held that the burden rests with the "[p]laintiffs, as the parties challenging their permanent disqualification from SNAP."  *Arias v. United States*, No. 13 Civ. 8542 (HBP), 2014 WL 5004409, at *6 (S.D.N.Y. Sept. 29, 2014); *see, e.g.*, *Capellan*, 2020 WL 1047907, at *3; *Muazeb*, 2019 WL 1613433, at *7; *Kawran Bazar Inc. v. United States*, No. 15 Civ. 6109 (NGG), 2016 WL 7235723, at *3 (E.D.N.Y. Dec. 13, 2016), *aff'd*, 721 F. App'x 7 (2d Cir. 2017); *Saleh v. U.S., Dep't of Agric. Food & Nutrition Serv.*, No. 13 Civ. 4095 (ERK), 2014 WL 4905456, at *3 (E.D.N.Y. Sept. 30, 2014).

### C.  FNS's Determination that Loma Engaged in Trafficking

FNS's determination that it is more likely than not that Loma trafficked in SNAP benefits is amply supported by the record.  FNS disqualified Loma based on an assessment of Loma's EBT data, the characteristics and capabilities of Loma observed during a store visit, a comparison of Loma's transactions to those of nearby stores, and an evaluation of the shopping habits of those households that engaged in suspicious transactions at Loma.  Specifically, the administrative record reflects that from March 2019 through August 2019, Loma conducted 328 transactions that FNS deemed "suspicious."  These fell into two categories.

First, FNS identified twenty-three sets of "relatively large, multiple purchases" (fifty-four total transactions) conducted by fourteen households in short periods of time, ranging from just under four minutes to approximately thirty hours, and totaling $3,520.40.  A.R. at 385, 388-90, 1047-50.  This included, for instance, one transaction of $34.23 followed by another transaction of $48.21 less than four minutes later; three transactions of $45.50, $29.99, and $24.98 within about six and a half hours; and two transactions of $231.38 and $217.54 within approximately thirty hours.  *Id.* at 1047-50.

As FNS explains, "[i]n an attempt to avoid detection, retailers engaging in trafficking will commonly break a single aberrantly large transaction into a series of two or more transactions conducted over an abbreviated period of time."  *Id.* at 1047.  Courts have found that repetitive transactions within a short period of time can be indicative of trafficking.  *See, e.g.*, *Muazeb*, 2019 WL 1613433, at *9 ("Even more convincing than the evidence of the high number of transactions ending in the same cents value is the evidence of the notable number of repetitive transactions, occurring within a short period of time, and of the high dollar amounts of many of those transactions."); *109 Merrick Deli Corp. v. United States*, No. 11 Civ. 977 (SLT) (RER), 2014 WL

6891944, at *4 (E.D.N.Y. Sept. 30, 2014) (pointing to, among other transaction data, "a pattern of repetitive large-dollar-value transactions on the same household accounts during single twenty-four hour periods").  And when compared to these households' other transactions, many of these purchases became even more suspicious.  For instance, one household made two purchases of $189.55 and $119.50 at Loma within a period of approximately twenty-six hours.  A.R. at 1049.  But that household spent $270.89 at a supermarket or superstore only half an hour before that first purchase at Loma, and $31.69 in-between these two purchases at Loma.  *Id.* at 1068.  As FNS convincingly explained, it would make little sense for a household to make a series of purchases, particularly large purchases, at Loma immediately before or after visiting a store with superior volume, stock, and price.  *Id.*  FNS concluded that "[t]he store visit report does not indicate any compelling reason for customers to . . . have made relatively large, multiple purchases at the store within an abbreviated time period," meaning the "most likely explanation" is trafficking.  *Id.* at 1047.

Second, FNS identified 274 "excessively large" transactions, ranging from $31.99 to $282.85 and totaling $16,265.61.  *Id.* at 385, 391-95, 1051, 1084-88.  FNS determined these 274 transactions were "very unusual and highly unlikely and indicative of trafficking" when compared to transactions at similarly-sized, nearby stores at the time.  *Id.* at 1051.  Thirty of those transactions were over $100 in value, and 104 were $50 or higher in value.  *Id.* at 391-92, 1084-88.  The average convenience store purchase transaction in Bronx County during the Review Period was $8.32.  *Id.* at 1051.  And of the 6,119 purchase transactions at Loma during the Review Period, 278 were over $31.98—at least 284.49 percent higher than the average store purchase transaction at a convenience store in Bronx County.  *Id.*  Based on the store visit, FNS found there was no compelling reason for customers to make such large purchases at Loma, since the store was

14

optimized only for small purchases, did not have any shopping carts, did not carry any specialized goods, and did not conduct a wholesale business or take orders by telephone, internet, or fax.  *Id.* at 1033, 1042-43.

Because the Government has presented ample evidence that Plaintiffs engaged in trafficking, the burden shifts to Plaintiffs to raise a question of material fact regarding each violation.  To meet this burden, Plaintiffs "need not produce records of each transaction," but "do bear the burden of showing that 'each cited instance of trafficking' was not validly deemed so." *Capellan*, 2020 WL 1047907, at *4 (quoting *SS Grocery, Inc. v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 340 F. Supp. 3d 172, 180 (E.D.N.Y. Sept. 11, 2018)).[3]

### 1.  The Government's Reliance on EBT Data

In their opposition to the Government's motion for summary judgment, Plaintiffs first take issue with the Government's reliance on EBT data.  Plaintiffs do not dispute that FNS may rely on EBT data in disqualifying a store.  *See* Opposition at 32.  Indeed, the statute and the regulations plainly allow FNS to do so.  *See* 7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a).  Nor do Plaintiffs challenge the accuracy of the EBT transaction records.  Nonetheless, Plaintiffs argue that any correlation between ALERT scan "patterns" and trafficking is "statistical in nature," and therefore is inadmissible absent expert testimony or evidence that the system produces an accurate result. Opposition at 32-33 (citing Fed. R. Evid. 701, 702, 901(b)(9)).

---

[3] Plaintiffs ask the Court to impose a lower burden, arguing that because the Government's evidence is based in part on EBT transaction patterns, Plaintiffs need only "provide explanations for how the scan categories came to be."  Opposition at 23 (citing *Onukwugha v. United States*, No. 11 Civ. 907 (AEG), 2013 WL 1620247, at *5 (E.D. Wis. Apr. 12, 2013)).  But this is contrary to the weight of case law in this Circuit and the statutory scheme.  Because "FNS may permanently disqualify a participant even after just one instance of trafficking," the plaintiff "must demonstrate that '*each* cited instance of trafficking' was invalid."  *Muazeb*, 2019 WL 1613433, at *7 (quoting *SS Grocery, Inc.*, 340 F. Supp. 3d at 180).

Plaintiffs overstate the role of the ALERT system in FNS's investigative process.  FNS relies on the ALERT system to "identify statistically unusual EBT transaction patterns" in order to "commence an investigation." *Nadia Int'l Mkt.*, 2015 WL 7854290, at *1.  However, it is the actual EBT data—as well as the store visit, a comparison to nearby stores, and an analysis of Loma's customers' shopping patterns—that formed the basis of FNS's decision to disqualify Loma.  *See Negash v. United States*, No. 17 Civ. 1954 (RDB), 2018 WL 722481, at *4 (D. Md. Feb. 5, 2018) (rejecting the plaintiff's challenge to the ALERT system, recognizing that while "[t]he electronic alert system triggered the investigation, . . . an on-site investigation and inconsistent redemption data were considered before the FNS determined that trafficking had occurred" (internal quotation marks omitted)), *aff'd*, 772 F. App'x 34 (4th Cir. 2019).

Plaintiffs do not cite to a single case in which a court has precluded the admission of EBT data absent an expert report or other supporting evidence.  Instead, it appears that courts regularly reject such arguments.  *See, e.g.*, *Tikabo v. United States*, No. 16 Civ. 2197 (NKJ) (GHM), 2017 WL 5075275, at *5 (S.D. Tex. Aug. 21, 2017), *report and recommendation adopted*, 2017 WL 4112306 (S.D. Tex. Sept. 18, 2017); *Maredia v. United States*, No. 4:13 Civ. 1124 (AHB), 2016 WL 7736585, at *5 (S.D. Tex. Aug. 16, 2016); *see also United States v. Al Asai*, No. 3:16 Crim. 149 (RGJ), 2018 WL 5816769, at *8 (W.D. Ky. Nov. 6, 2018); *United States v. Estephane*, No. 3:16 Crim. 148 (TBR), 2017 WL 4927676, at *6 (W.D. Ky. Oct. 31, 2017).  On the other hand, courts regularly grant summary judgment based on EBT transaction data.  *See Nadia Int'l Mkt.*, 689 F. App'x at 33 ("[I]t was entirely proper for FNS to rely on transaction data alone in making its trafficking determination."); *Idias v. United States*, 359 F.3d 695, 696 (4th Cir. 2004) ("There can also be little question that the United States was entitled to use this sort of documentary evidence to prove that [the plaintiff] trafficked in food stamps."); *Sky Grocery, LLC v. U.S. Dep't*

*of Agric. Food & Nutrition Serv.*, No. 15 Civ. 1082 (JBA), 2017 WL 1054484, at *8 (D. Conn. Mar. 20, 2017) ("In this Circuit, district courts have granted summary judgment on the basis of EBT data."); *see also Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1178 (D. Haw. 2009) ("FNS does not need to provide evidence that a store was caught 'red-handed' engaging in a food stamp violation in the summary judgment stage.   The court may grant the government's motion for summary judgment based on evidence from transaction reports." (quoting *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303-04 (S.D. Cal. 2000))).   As such, Plaintiffs' attack on the "patterns" identified in the ALERT system does not give rise to a question of material fact.

Plaintiffs make another argument with respect to the EBT data: that FNS miscategorized Loma as a convenience store when it should have been categorized as a small or medium grocer, causing certain transactions to be coded as suspicious that would not have been had Loma been properly categorized.   Pls. 56.1 Stmt. ¶¶ 61-62; Opposition at 24-27.   But Loma's designation as a convenience store was based on Loma's own application to become a SNAP retailer, *see* A.R. at 5, 1006, 1031, and the record reflects that Loma's stock and volume of goods were similar to those of nearby convenience stores, *id.* at 943, 1006.   Plaintiffs do not seriously contest these facts, and instead deem FNS's categorization arbitrary because Loma had similar square footage and inventory to a nearby store categorized as a medium grocer.   Opposition at 25-27.   But any comparison to that nearby grocer does little to benefit Plaintiffs' case, as that store completed only $15,354.36 in SNAP sales during the Review Period—far less than Loma's $70,689.92.   A.R. at 945.   Moreover, FNS already accounted for this argument during the administrative proceedings: FNS compared Loma to the three closest small grocery stores that completed at least $1,000 in monthly SNAP transactions, and concluded that Loma still had unusual transaction activity.   A.R. at 1006-09.   Thus Loma has failed to raise a question of material fact based on this as well.

### 2.   The Inferences of Trafficking

Plaintiffs also attempt to explain away the evidence indicative of trafficking.   First, Plaintiffs assert that Loma's transaction size averages were within national averages and any aberrant transactions were "statistically likely to occur at some rate" based on Loma's inventory and proximity to SNAP households with multiple adults and children.   Opposition at 27-28.   But Loma's transaction volume and average transaction amounts were significantly higher than those of nearby SNAP-authorized convenience stores, which presumably would have benefitted from the same proximity and convenience to customers.   *See* A.R. at 1055.   While Plaintiffs point to national averages, they fail to explain the stark differential between Loma's total dollar volume of SNAP benefits during the Review Period, $70,689.92, and the total dollar volume of the average convenience store in Bronx County during the same timeframe, $35,495.10.   A.R. at 1055-57. And Plaintiffs have not provided any explanation for why their customers, who often visited supermarkets and superstores on the same days as Loma, spent substantially more at Loma, which did not have any particular specialty goods.   *See* A.R. at 944, 946-49, 997, 999-1002, 1021, 1042-43.

Second, Plaintiffs claim that the trends that FNS found indicative of trafficking were a legitimate result of customers' shopping habits.   Specifically, Plaintiffs contend that many SNAP customers with young families shop at Loma, and that the U.S. Department of Agriculture has recognized that families with children shop more frequently and spend more than the "average" SNAP household.   Opposition at 29; Rodriguez Affidavit ¶¶ 5 ("A large portion of the residents in the building my store is located in . . . are families."), 8 ("My customers . . . would frequently come in with their young children while they were shopping."); A.R. at 451, 520-21.   Plaintiffs

also assert that co-shopping, where adults from the same SNAP household shop separately on the same account, "is a factor at this store."  Opposition at 30.

But "generalized, hypothetical explanations for the suspicious redemption activity" and "unsubstantiated conjecture" are "insufficient to create a genuine issue of material fact."  *J & L Liquor, Inc. v. United States*, 4:16 Civ. 10717 (SDD), 2017 WL 4310109, at *7 (E.D. Mich. Sept. 28, 2017).  Plaintiffs "cite no specific examples, provide no data, and do not attempt to account for the specific transactions identified by FNS."  *Id.*  And Plaintiffs cannot rely on a conclusory affidavit from Rodriguez, since it is well-settled that "a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove."  *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010); *see, e.g.*, *183 Bronx Deli Grocery Corp. v. United States*, No. 11 Civ. 1527 (PGG), 2012 WL 2359664, at *3 (S.D.N.Y. June 18, 2012) ("The non-movant 'cannot avoid summary judgment simply by asserting a metaphysical doubt as to the material facts,' and 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (first quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005); and then quoting *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004))); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (noting that "unsupported allegations do not create a material issue of fact").[4]

Finally, Plaintiffs assert that a report from an undercover investigator from the USDA's Retailer Investigative Branch ("RIB") provides "direct evidence" that trafficking was not

---

[4] Rodriguez also attests that customers made successive purchases because they would purchase groceries, carry said groceries upstairs or across the street to their apartments, and return to Loma to make additional purchases.  Rodriguez Affidavit ¶ 12.  Plaintiffs do not pursue this theory in their brief.  Nor is it supported by the evidence:  Of the twenty-three sets of transactions, all but three were made hours apart, meaning that the customers did not quickly return to the store.  A.R. at 388-90, 1021.

occurring during the Review Period.  Opposition at 31.  An RIB investigator visited the store in March 2019, the first month of the Review Period, and attempted to traffic in SNAP benefits but was refused by the cashier.  *See* Routine Store Visit Report at 1.  The investigation report also reflects that a cashier at Loma also refused to engage in a fraudulent transaction in November 2018.  *Id.*  RIB concluded that, "in the absence of indications that the subject store violates program regulations the investigation was terminated and the case is closed."  *Id.*  But an isolated store visit during the Review Period and another the year prior, during which cashiers refused to conduct fraudulent transactions, do not explain any of the 328 suspicious transactions.

Plaintiffs have not cited to any other evidence that raises a question of material fact sufficient to overcome summary judgment.  In "cases in this posture, plaintiffs have sometimes submitted evidence such as actual receipts from EBT customer transactions, showing the purchase of eligible food items with SNAP benefits, or statements or affidavits from customers or employees articulating a legitimate reason for any questionable EBT transactions."  *Muazeb*, 2019 WL 1613433, at *11.  Plaintiffs have not done so, nor have they suggested that they would for some reason lack access to such receipts or potential witnesses.  Rodriguez merely submitted an affidavit denying trafficking occurred.  Rodriguez Affidavit ¶ 10.  But an "unsubstantiated affidavit of [the store's] owner stating that trafficking did not occur . . . 'cannot create a triable issue of fact.'"  *Sky Grocery, LLC*, 2017 WL 1054484, at *9 (quoting *Hicks*, 593 F.3d at 167).  During the administrative proceedings, Plaintiffs submitted eight customer affidavits.  A.R. at 983-90.  In these affidavits, several customers attested that they made legitimate large purchases at Loma within short periods of time.  *Id.*  But of the eight affiants, one did not have any SNAP transactions at Loma during the Review Period and the others had several suspicious purchases at Loma during that time.  *Id.* at 1011.  One affiant, for instance, conducted twelve SNAP transactions at Loma

during the Review Period averaging $120.67 per transaction, which is particularly suspicious when compared to that customer's 119 SNAP transactions at other authorized stores averaging $10.31 per transaction.  *Id.* at 1011-13, 1023-24.  These affidavits thus do not call into question the inference of trafficking arising from the 328 suspicious transactions.  If anything, the conduct of at least some of these customers only reinforces that inference.  And as explained below, Loma has not set forth any reason why additional discovery to which it does not already have access would change the Court's conclusion.

In sum, FNS's determination that Loma more likely than not trafficked in SNAP benefits is well supported by the record, and Plaintiffs have failed to raise any question of material fact as to the validity of FNS's decision.  The Government has "presented the district court with a considerable body of circumstantial evidence," including EBT transaction data, store comparison data, and on-site information, "demonstrating that the [plaintiff] had engaged in SNAP benefits trafficking."  *Timsina*, 835 F. App'x at 636.  Plaintiffs must do more than raise a metaphysical doubt that some of the transactions may not have been the result of trafficking.  *See id.* at 637 ("So even if the [plaintiff's] proffered explanations could account for some of the suspicious transactions, there still remained ample circumstantial evidence to support the inference that the [plaintiffs] had trafficked in SNAP benefits.").  Loma's "conclusory assertions and speculative alternative explanations" regarding its convenience, customer preferences, inventory, and misclassification do not create a genuine issue as to any material fact.  *109 Merrick Deli Corp.*, 2014 WL 6891944, at *4.

### 3.  Additional Discovery Is Not Warranted

Plaintiffs also submitted a declaration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, asserting that discovery would uncover material facts sufficient to overcome summary

judgment.  As an initial matter, contrary to Defendants' argument that "most" courts deny early motions for summary judgment, Opposition at 16, the Government correctly notes that courts regularly grant summary judgment in SNAP cases without allowing for additional discovery, *see* Reply at 11-12 (citing *Green Apple Grocery v. USDA*, No. 19 Civ. 1408 (RDB), 2021 WL 533730 (D. Md. Feb. 12, 2021); *Negash*, 2018 WL 722481; *Tikabo*, 2017 WL 5075275; *Rosario v. United States*, No. 3:14 Civ. 00907 (RNC), 2017 WL 4316093 (D. Conn. Sept. 27, 2017); *J & L Liquor, Inc.*, 2017 WL 4310109; *Suuqa Bakaro Grocery v. United States Dep't of Agric.*, No. 2:16 Civ. 254 (DBH), 2017 WL 3141919 (D. Me. July 24, 2017), *aff'd sub nom. Irobe v. United States Dep't of Agric.*, 890 F.3d 371 (1st Cir. 2018); *Shanaa v. United States*, No. 2:15 Civ. 42 (NJ), 2017 WL 2838150 (E.D. Wis. June 30, 2017); *Sky Grocery, LLC*, 2017 WL 1054484; *Maredia*, 2016 WL 7736585; *Fajardo v. United States*, No. 2:15 Civ. 4790 (FMO), 2016 WL 4010080 (C.D. Cal. July 25, 2016); *Savera Super Store, LLC v. United States*, No. 14 Civ. 554 (JD), 2016 WL 55274 (D.N.H. Jan. 5, 2016); *AJS Petroleum, Inc. v. United States*, No. 11 Civ. 1085 (BEL), 2012 WL 683538 (D. Md. Mar. 1, 2012)).

"A party seeking to delay resolution of a summary judgment motion on grounds that [it] has been deprived of certain discovery materials 'must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient.'" *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).  "A court plainly has discretion to reject a request for discovery . . . if the request is based only on 'speculation as to what potentially could be discovered,' and a bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary

judgment." *In re Dana Corp.*, 574 F.3d 129, 148-49 (2d Cir. 2009) (citation omitted) (quoting *Paddington Partners*, 34 F.3d at 1138).

Plaintiffs seek several types of documents and to depose both FNS officials and Loma's customers. *See* Rule 56(d) Declaration. These can be grouped into two main groups of requests. First, Plaintiffs seek information regarding FNS's procedures and decision-making process. Specifically, Plaintiffs request information regarding how FNS categorizes stores, hoping to show Loma was miscategorized, *id.* ¶ 1, and FNS standard operating procedures, in order to "show the importance of store type categorization in EBT Data analysis," *id.* ¶ 6. Plaintiffs also seek to depose three FNS witnesses regarding the ALERT system, the probative value of EBT patterns, and the decision to disqualify Loma. *Id.* ¶¶ 7-9.

But "[t]he crux of this case is not whether the ALERT system is a reliable investigative tool"; it is "whether Plaintiffs can demonstrate by a preponderance of the evidence that they did not engage in trafficking of SNAP benefits as charged and determined by the Agency." *Timsina*, 2:17 Civ. 126 (CR), 2019 WL 3254689, at *3 (D. Vt. July 19, 2019), *aff'd*, 835 F. App'x 633 (2d Cir. 2020). "The testimony of [FNS] officials and employees who analyzed Plaintiffs' data is simply not relevant to whether Plaintiffs trafficked in EBT benefits because noncompliance or unreliable investigative methods by [FNS] representatives would neither fulfill nor excuse Plaintiffs' burden of proof." *Id.* Moreover, as explained above, even if Loma were miscategorized as a convenience store, and should have been characterized as a small grocery store, that would not give rise to a question of material fact sufficient to survive summary judgment because Loma still had unusual SNAP transaction activity when compared to the three closest small grocery stores. A.R. at 1006-09. Moreover, as also noted earlier, the nearby "medium grocery store" that

Loma points to engaged in $15,354.36 in SNAP sales during the Review Period, less than one-quarter of the $70,689.92 in SNAP transactions that Loma had during that same time.  A.R. at 945.

Second, Plaintiffs seek additional customer and transaction data.  Plaintiffs seek household transaction data spanning eighteen months, both before and after the Review Period, on the basis that "[s]uch information may reveal similar shopping habits that are peculiar to individual households."  Rule 56(d) Declaration ¶ 2.  Plaintiffs also seek "all information" on the households that engaged in suspicious trafficking so they may depose these individuals and because the information "may support" Plaintiffs' theory that customers' shopping habits are responsible for any aberrant transactions.  *Id.* ¶ 3.  Plaintiffs also want all scan data from Loma "from time periods before and after the Review Period" to show "a common course of conduct at the store by SNAP participants."  *Id.* ¶ 5.

But a party seeking discovery cannot simply engage in a "fishing expedition" based on bare speculation that additional data might reveal something beneficial.  *Oliver v. N.Y. State Police*, No. 15 Civ. 444 (BKS) (DJS), 2019 WL 1324040, at *4 (N.D.N.Y. Mar. 22, 2019).  Plaintiffs have not explained how this data would raise a question of material fact sufficient to survive summary judgment.  In fact, courts have denied such broad requests because "information about other stores, SNAP data outside the relevant time range, and personal information about households who purchased from Plaintiffs' store" will not help plaintiffs meet their burden at the summary judgment stage, since this data "will not demonstrate how these violations were not instances of trafficking."  *Tikabo*, 2017 WL 5075275, at *7.  What is relevant is the activity of transactions that occurred at Loma during the Review Period and, as discussed above, that activity supports FNS's determination that Loma more likely than not trafficked in SNAP benefits.

Nor have Plaintiffs explained why they were unable to procure much of this discovery previously. Plaintiffs acknowledge they have access to some personal information for the SNAP households in question. *See* Rule 56(d) Declaration ¶ 3. Indeed, during the administrative process, Plaintiffs submitted sworn affidavits from eight of their customers, including some who had engaged in the suspicious transactions, *see* A.R. at 983-90, and these affidavits do not give rise to a question of material fact.

In sum, Plaintiffs have failed to demonstrate that any additional discovery would change the landscape of this case. *See AJS Petroleum, Inc.*, 2012 WL 683538, at *4 (denying discovery for "an unredacted administrative record, information linking the apparently irregular EBT transactions to the households that made them, and extensive discovery related to the alleged violations" because "the administrative record and other evidence appended to the parties' briefs provide a sufficient factual foundation"); *Tikabo*, 2017 WL 5075275, at *7 (denying the plaintiffs' request for additional discovery upon finding that they "appear[ed] to be utilizing these broad discovery requests to distract the court from their burden of disproving the trafficking violations"). As such, their request for additional discovery is denied.

### D. FNS's Imposition of a Permanent Disqualification

Finally, the Court turns to FNS's imposition of a permanent disqualification from SNAP. If FNS finds that a retailer engaged in trafficking, FNS must disqualify the retailer unless FNS determines that the retailer meets the criteria for a CMP. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i). In order to qualify for a CMP, the store must provide documentation within ten calendar days of receiving the Charge Letter to show that: (1) the store had "established an effective compliance policy to prevent violations," 7 C.F.R. § 278.6(i)(1); (2) the store had provided policy statements to "violating employee(s) prior to the commission of the violation," *id.*; (3) the store

had "developed and implemented an effective training program for all managers and employees on the acceptance and handling of food coupons," *id.* § 278.6(i)(2).; and (4) either that "[f]irm ownership was not aware of, did not approve, did not benefit from or was not in any way involved in the conduct or approval of trafficking violations," or that this was only the first occasion on which the ownership had known of, approved, or benefited from trafficking violations, *id.* § 278.6(i).

While Plaintiffs alleged in the Complaint that FNS's imposition of a permanent disqualification was arbitrary and capricious, Compl. ¶ 53, they failed to respond to the Government's motion for summary judgment on this point, *see* Motion at 20-21; Opposition. Accordingly, Plaintiffs have waived their right to challenge FNS's determination to disqualify Loma from SNAP. *See Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 10116 (VSB), 2020 WL 4699043, at *4 (S.D.N.Y. Aug. 12, 2020) ("In the Second Circuit, a party that fails to raise an argument in its opposition papers on a motion for summary judgment has waived that argument." (collecting cases)).

But even if Plaintiffs had not waived this argument, the Court would still find in favor of the Government on this ground.   Plaintiffs did not submit any documentation to FNS demonstrating Loma's eligibility for a CMP.  *See* A.R. at 925, 1025; *see also Nadia Int'l Mkt.*, 689 F. App'x at 34 (affirming disqualification and noting that "[a]lthough FNS advised [the plaintiff] of its option to request a monetary penalty and establish its eligibility for one, [the plaintiff] never made such a request to the agency"); *Arias*, 2014 WL 5004409, at *13 (noting plaintiffs were not entitled to a CMP where they "failed to offer dated, documentary evidence of a compliance policy").   And FNS followed regulations and guidelines requiring it to impose a permanent disqualification on Loma.   The Court thus concludes that the penalty was not arbitrary or

capricious.  *See Lugo v. United States*, No. 08 Civ. 2960 (RJS), 2009 WL 928136, at *3 (S.D.N.Y. Mar. 30, 2009) (concluding that the plaintiff's disqualification was not arbitrary and capricious because the penalty imposed was "fully in accord with the settled policies of the FNS").  The Court thus grants summary judgment in favor of the Government on this ground as well.

### IV.  Conclusion

For the aforementioned reasons, the Government's motion for summary judgment is granted.  Because the Court concludes that oral argument in this case is unnecessary, Plaintiffs' motion for oral argument, Dkt. 57, is denied.  The Clerk of the Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

Dated: September 10, 2021
       New York, New York

JOHN P. CRONAN
United States District Judge